UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

In re:

REMEDIUM PHARMACY, LLC,

                    Debtor

Chapter 11

Case No. 26-40803-EDK

**JOINT PRETRIAL MEMORANDUM RE:
UNITED STATES TRUSTEE'S MOTION
TO APPOINT A CHAPTER 11 TRUSTEE
(WITH CERTIFICATE OF SERVICE)**

**TO: THE HON. ELIZABETH D. KATZ, CHIEF UNITED STATES
BANKRUPTCY JUDGE:**

Pursuant to the Court's amended pretrial order (DE50), William K. Harrington, the United States Trustee for Region 1, and Remedium Pharmacy, LLC ("Debtor") submit this joint pre-trial memorandum in connection with the United States Trustee's motion (DE47) (the "Trustee Motion") to appoint a chapter 11 trustee under 11 U.S.C. § 1104(a)(1) and (2) and the Debtor's objection (DE65) ("Objection"). The Debtor reserves the right to fully examine statements of fact in the context of thorough and complete review.

**STATEMENT OF UNDISPUTED FACTS**

1. The Debtor filed a voluntary chapter 11 petition on July 6, 2026.

2. The Debtor's telephonic section 341 meeting is scheduled for Monday, August 3, 2026 at 1:30 p.m.

1

3. By order dated July 20, 2026, the Court extended the deadline for the Debtor to file its schedules and SOFA through July 29, 2026, to permit the Debtor's proposed financial advisors to begin reconstructing the Debtor's accounting records, which required significant remediation. (DE45 at 2) (extension motion).

4. The Debtor filed its schedules and SOFA on July 29, 2026. DE61.

5. The Debtor provided additional financial position and performance information in its first day motions,[1] Mr. Iepure's affidavit (the "Iepure Affidavit"), the affidavit of the Debtor's proposed financial advisor, Mr. Charles Berk and CBIZ (DE41), Mr. Berk's reworked post-petition cash forecast ("Amended Budget") (DE41-1), which Mr. Berk says is "based on the [Debtor's] actual [year to date] activity . . . ," (*Id.*) and the complaint ("Complaint") that the Debtor filed against its alleged secured creditors, including institutional lenders, the U.S. Small Business Administration, BayFirst National Bank/BayFirst Financial and On Deck Capital (collectively, the "Institutional Lenders"), one

---

[1] The Debtor filed motions on July 7 and 8, 2026 requesting authorization to use cash collateral (DE5) (the "Cash Collateral Motion"), to obtain DIP financing (DE6) (the "DIP Motion"), to maintain its existing cash management system to waive the requirements of section 345(b) (DE7) (the "Cash Management Motion"), to pay critical vendors (DE9) (the "Critical Vendor Motion") and to pay prepetition wages (DE11) (the "Prepetition Wage Motion") (collectively the "First Day Motions").

supplier, AmerisourceBergen Drug Corporation ("Amerisource"), and the 17 MCA Lenders. *Remedium Pharmacy, LLC v. Itria Ventures, LLC et al.*, Adv. Pro. No. 26-4026.

6. On July 7, 2026, the United States Trustee informally asked the Debtor produce copies of its most recent audited or unaudited financial statements.

7. In response, the Debtor produced 1) an "estimated" balance sheet as of June 30, 2026 ( "Balance Sheet"); 2) a corporate ownership chart ("Chart") and 3) FCI's 2023 and 2024 Federal tax returns (collectively the "Tax Returns").

8. The Chart shows that FCI 100% owns the Debtor and that Mr. Flaviu Iepure and his wife, Ms. Cristina Iepure, each 50% own FCI.

9. FCI's sole asset is its 100% interest in the Debtor.

10. FCI is a "S" Corp. pass through entity to the Mr. and Mrs. Iepure.

11. FCI's 2025 tax returns have not yet been filed.

12. FCI's 2023 Tax Return shows that it recognized ordinary business income of $243,308 (Schedule "K" at line 1) and reported "Loans to shareholders" of $1,235,723 at the beginning of the year and **$1,689,298** at the end of the year (Schedule L at line 7), an increase of $435,575.

13. FCI's 2024 Tax Return shows that it recognized ordinary business

3

income of $343,270 (Schedule "K" at line 1) and reported "Loans to shareholders" of **$1,764,498** at the beginning of the year and $2,282,127 at the end of the year, an increase of $517,629 (Schedule "L" at line 7). The Tax Returns have not been attached to this pleading and are available.

14. According to the Balance Sheet:

    a. the Debtor's current assets total $5,221,000, including "Loan to Flaviu and Cristina" totaling $3,571,000," or 68% of the total, and a $78,000 "loan" to "RxFlow Robotics;"

    b. the Debtor's liabilities total $6,939,000 and consist of current liabilities of $4,082,000 and long term liabilities of $2,857,000;

    c. current liabilities consist of "Merchant Cash Advances" of $2,581,000 and "Accounts Payable" of $1,426,000; and

    d. long term liabilities consist of alleged bank loans of $857,000 and the SBA of $2,000,000.

15. According to the Tax Returns and the Balance Sheet, loans to shareholders increased by $1,288,873 between December 31, 2024 through June 30, 2026 ($3,571,000-$2,282,127=$1,288,873). *Compare* FCI's 2024 Tax Return *with* Balance Sheet.

16. In the Iepure Affidavit, Mr. Iepure described the transfers as part of a diversification strategy to develop RXFlow Robotics LLC, a company

4

intended to build medication-packaging robots that could support pharmacy operations. The Debtor has produced a detailed Summary of Alleged Pre-Petition Transfers (Exhibit 10) categorizing the uses of the funds. Formal promissory notes were not executed, consistent with what the Debtor says are the informal practices common in closely held entities of this size; the transfers are carried on the Debtor's books as receivables. In the schedules, the Debtor valued them as uncollectible and worth zero.

17.    No documents previously produced by the Debtor confirm what the Iepures actually did with the loans that they received from the Debtor. The Debtor will offer as Exhibit 16 is a summary of the disposition of loan proceeds. A more detailed itemization is available upon request.  The United States Trustee has not agreed to the admission of Exhibit 16, because he has not been provided with the underlying data.

18.    On July 12 and 13, 2026, the United States Trustee emailed the Debtor's attorneys requesting that the Debtor produce, among other things, "documents evidencing Mr. and Mrs. Iepure obligation to repay their loans to the debtor, including promissory notes, if any, and showing when the loans were taken out . . .."

19.    The Debtor has produced no responsive documents, although the

Debtor attached to its Objection a "Summary of Alleged Pre-Petition Transfers From 2024 – July 5, 2026." *See* Exhibit List *infra.*

20.     The shareholder loans to Mr. and Mrs. Iepure are not evidenced by promissory notes.

21.     The Debtor has not commenced formal recovery actions against Mr. and Mrs. Iepure pending the retention of the proposed CRO and the development of a plan of reorganization, under which any potential claims, contributions, or subordinations relating to the shareholder loans will be subject to creditor scrutiny and Court approval. The pending Complaint does not name Mr. and Mrs. Iepure as defendants.

22.     Mr. Iepure and, possibly, Ms. Iepure guaranteed the MCA Lenders' loans to the Debtor.

23.     Mr. Iepure and, possibly, Ms. Iepure guaranteed one or more of the critical vendors' prepetition claims.

24.     The United States Trustee conducted the Debtor's initial debtor interview on July 21, 2026.

25.     At the initial debtor interview (not under oath), Mr. Iepure stated that portion of the transfers was used for personal expenses and a portion was used for RXFlow Robotics LLC, and that some MCA proceeds may have been

applied in the same manner. The Debtor asserts that its subsequent transfer summary provides a more granular breakdown of the uses.

26. Mr. Iepure also stated that some of the MCA loans were "probably" used to fund the loans to RxFlow Robotics LLC.

27. The first 12 counts of the Complaint seek, among other things, declaratory relief that the Institutional Lenders and Amerisource, the Debtor's primary supplier and a critical vendor, are secured or partially secured, that the MCA Lenders are not secured, to void the MCA Lenders' loan agreements as impermissible adhesion contracts, to disallow the MCA Lenders' claims as usurious under State law, to recover avoidable prepetition transfers to the MCA Lenders and to equitably subordinate the MCA Lenders' claims. Complaint at 15-41 (counts I – XII).

28. The thirteenth seeks to extend the Debtor's automatic stay to unnamed insider guarantors, presumably including the Iepures, to enjoin collection of their personal guaranties of the MCA Lenders' claims under 11 U.S.C. §§ 105(a) and 362(a), because, without elaboration, their "financial assistance is necessary to the Debtor's reorganization . . . ." *Id.* at 41-44 (count XIII).

29. In the Complaint, the Debtor admitted that it was, at all relevant

times, insolvent from and after two years prior to the petition date, or July 6, 2024. Complaint at 37, ¶233.

30.     In the Objection, the Debtor observes that it has not yet specifically requested injunctive relief on behalf of the Iepures.

31.     The Court conducted hearings on the First Day Motions on July 10, 2026.[2]

32.     Under the interim cash collateral order (DE44) (the "Interim Cash Collateral Order"), the Court authorized the Debtor to provide secured creditors with replacement liens and super-priority claims only to the extent to diminution, along with interest only payments to the SBA.   DE44; DE41-1 (Amended Budget).

33.     On the record, the Court permitted the Debtor to make $12,500 weekly payments to critical vendors beginning at Week 2, but only to the extent of their section 503(b)(9) priority amounts, pending verification of amounts and

---

[2]     *See* DE34 (proceeding memorandum re: Cash Collateral Motion).  The Court deferred consideration of the DIP Motion until July 23, 2026.  Docket entry at July 10, 2026; DE35 (directing the Debtor to file a supplemental affidavit outlining its efforts to secure DIP financing per the requirements of section 364(c) be filed by July 16, 2026); DE36 (proceeding memorandum approving cash management motion on an interim basis through August 13, 2026); 37 (proceeding memorandum granting critical vendor motion "on an interim basis on the limited terms set forth in open Court at the hearing held this date . . ."); DE38 (order granting prepetition wage motion).

subject to reconciliation in week 3. Amended Budget. Payments to Critical Vendors will total $150,000 through week 13. *Id.*

34. The Court entered a second interim cash collateral order (DE60) ("Second Interim Cash Collateral Order") on July 28, 2026. At the Debtor's request, it recharacterized the weekly critical vendor payments to Amerisource as "adequate protection." DE60 at 4.

35. The Court will conduct another interim hearing on the Cash Collateral Motion on August 6, 2026, along with the DIP Motion. *Id.* at 6.

36. Under the DIP Motion, Alleon Capital ("Alleon") will give the Debtor what it says is a $1,000,000 line of credit secured by all assets, focusing on accounts receivable deposited into a control account that is not a DIP account.

37. On August 3, 2026, the Court entered an interim order ("Interim DIP Order") authorizing Alleon to make interim advances totaling $250,000 under the DIP Motion. Amended Budget. Interest accrues at 17.5% APR. *See* DE41 (Berk Affidavit).

38. Under the Critical Vendor Motion, the Debtor proposes to use cash collateral and the DIP line to pay 100% of $1,393,599 in prepetition claims owed to 4 critical vendors, including Amerisource, whom the Complaint suggests

is also secured.  DE9 at 4-5.  The Critical Vendor Motion makes no mention of other vendors and unsecured creditors.

39.     Neither the Critical Vendor Motion nor the Amended Budget indicate when or how the Debtor will pay the $1,243,599 balance ($1,393,599-$150,000=$1,243,599) to the critical vendors or whether it will have sufficient funds under a plan to pay 100% to similarly situated unsecured creditors.

40.     The Debtor paid no employer share of taxes on the prepetition loans taken by the Iepures.

41.     The Debtor withheld no income taxes on the prepetition loans take by the Iepures.

**STATEMENT OF DISPUTED ISSUES (FACTUAL OR LEGAL)**

42.     Whether "cause" exists under section 1104(a)(1) to appoint a chapter 11 trustee.

43.     Whether the appointment of a chapter 11 trustee is in the best interest of creditors under section 1104(a)(2).

44.     Whether the appointment of CRO in general or under the terms of the proposed engagement (DE64) (application) is the equivalent of operating trustee under section 1104(a).

**LIST OF DOCUMENTS**

45.    The United States Trustee and the Debtor stipulate as to the identity, authenticity and admissibility of the documents below:

| Exhibit Number | Description |
|---|---|
|  |  |
| 1 | Motion to extend time to file schedules and SOFA (DE45) |
| 2 | Affidavit of Flaviu Iepure (DE2) |
| 3 | Ownership chart |
| 4 | Estimated balance sheet as of June 30, 2026 |
| 5 | 2023 Amended Federal tax return - FCI Investments, Inc. |
| 6 | 2024 Federal tax return – FCI Investments, Inc. |
| 7 | Schedules and SOFA (DE61) |
| 8 | Insider payment detail (based on SOFA 4 attachment) |
| 9 | Summary of insider payments (based on SOFA 4 attachment) |
| 10 | Summary of alleged prepetition transfers (DE67) |
| 11 | US SBA UCC-1 (01-06-2021) |
| 12 | US SBA continuation statement (11-12-2025) |
| 13 | Amerisourcebergen – UCC-1  (02-22-2023) |
| 14 | Complaint (AP 26-4026) |
| 15 | Revised forecast |
| 16 | Summary Chart Explaining Disposition of Loan Proceeds |

## STATEMENTS SUMMARIZING THE PARTIES' RESPECTIVE CASES

### A. The United States Trustee

### Cause exists under section 1104(a)(1).

46.     The United States Trustee contends that "cause" under 11 U.S.C. § 1104(a)(1), including fraud, dishonesty, incompetence or gross mismanagement before the commencement of the Debtor's case is established here, because Mr. Iepure diverted $3,571,000 of the Debtor's cash prior to the Petition Date and "probably" some of the MCA loans for his own purposes and failed to ensure that the Debtor maintained comprehensible and updated accounting records that its bankruptcy professionals could rely upon.

47.     Indeed, according to his affidavit, Mr. Iepure loaned himself and his wife $1,288,873 of the Debtor's funds during 2025 – 2026 - after the Debtor had been forced to take the MCA loans - because it was short of cash and could not liquidate its bills as they came due.  *Compare* FCI's 2024 Tax Return *with* Balance Sheet *and with* Iepure Affidavit at 8.

48.     It is difficult to image more egregious examples of fraud, dishonesty, incompetence or gross mismanagement by the current management of a chapter 11 debtor than Mr. Iepure's continuing to borrow company money during a prepetition liquidity squeeze and his maintaining books and records so

woeful that estate professionals publicly disclaim them.  *See In re Lopez-Munoz,* 553 B.R. at 190.

49.     Accordingly, the Court should appoint an operating chapter 11 trustee.  11 U.S.C. § 1104(a)(1).

### Appoint of a chapter 11 trustee is in the interests of creditors under 11 U.S.C. § 1104(a)(2).

50.     The United States Trustee contends that the appointment of a chapter 11 trustee is in the interests of creditors under 11 U.S.C. § 1104(a)(2), because Mr. Iepure is also hopelessly conflicted and cannot execute his fiduciary duties as the Debtor's chief executive officer.

51.     Specifically, Mr. Iepure is unlikely to direct the Debtor to collect the $3,571,000 that he owes the estate or to recover all or part of it as a fraudulent transfer under 11 U.S.C. § 548(a) and he has clearly signaled his intention to use the Debtor's bankruptcy case to protect himself from the MCA Lenders and to retain his control of the company.

52.     Mr. Iepure's immediate removal as the Debtor's manager will give creditors' confidence that any reorganization proposed by the Debtor will be untainted by Mr. Iepure's self-interest.

53.     Accordingly, the appointment of a chapter 11 trustee is in the interests of creditors under 11 U.S.C. § 1104(a)(2).

54. The appointment of a CRO is not the equivalent of an independent chapter 11 trustee under the circumstances of this case.

55. The Debtor's Balance Sheet books no asset for investment in RxFlow Robotics LLC.  Balance Sheet.

**B**. **The Debtor**

56. The Debtor contends that cause does not exist under 11 U.S.C. § 1104(a)(1).

57. Virtually any business that files a petition under Title 11, Chapter 11 is characterized by at least some mismanagement.

58. The Debtor has already commenced an adversary proceeding to determine the validity, priority, amount and extent of the MCA claims and liens. This should help foster ultimate confirmation of a Plan.

59. Subject to entry of an order of retention, the Debtor has retained CBIZ Forensic Consulting Group, LLC ("CBIZ") as financial advisors who are reconstructing the Debtor's books and records and should provide this Court comfort regarding the operational management post-petition.

60. Subject to entry of an order of retention, the Debtor has retained (subject to this Court's approval) Getzler Henrich & Associates LLC to designate Mark Podgainy as Chief Restructuring Officer (the "CRO"), effective *nunc pro*

*tunc* to the petition date, and to provide related financial advisory and management consulting services, thereby eliminating any perceived conflict.

61.   Of the approximately $3.57 million in net prepetition transfers identified by the United States Trustee, the Debtor's records reflect that the funds were applied primarily as follows (i) approximately $1,205,000 to RXFlow Robotics LLC as an investment in a synergistic automation enterprise; (ii) approximately $407,000 in payments to Flaviu and Cristina Iepure in lieu of accrued salary, $330,000 in reported distributions, $307,000 toward the Iepure's residential mortgage, and $399,000 in additional loans; and (iii) approximately $809,000 used to manage MCA collection pressure on a controlled basis together with $57,000 for inventory. Any claims arising from these transfers may be pursued, compromised, subordinated, or contributed as part of a plan of reorganization that will be subject to the full panoply of creditor objection rights and Court approval. The Debtor reserves the right to fully examine the above figures in the context of thorough and complete review.

62.   RxFlow Robotics LLC was formed to automate selected operational processes for the benefit of the pharmacy business. In that regard, because the Debtor is not a shareholder of RxFlow, no equity interest appears on the Debtor's balance sheet. In connection with a plan of reorganization, Mr.

Iepure has stated his intention to pledge his interests in RxFlow for the benefit of creditors so that any value created remains available to the estate.

63.     It is both commonplace and commercially reasonable for the operators of a small business to pursue measured expansion and diversification through related entities in order to adapt to market demands and strengthen its competitive position. The Debtor's sustained support of RX Flow across multiple years exemplifies precisely this type of ordinary-course business judgment.

64.     Pharmacies depend on licenses, patient relationships, long-term care ("LTC") contracts and regulatory compliance that evaporate in a forced liquidation. The Motion, if granted, would convert a viable reorganization at this critical early stage of the case into precisely the Chapter 7 liquidation the U.S. Trustee Program is charged with preventing.

65.     A trustee would only impose an unnecessary additional layer of administrative expense on the estate.

66.     There has been no analysis by the U.S. Trustee of the collectability of transfers to the Iepures, and no evaluation of their value vis a vis the value of a going and viable business.

## LIST OF WITNESSES

67.    The United States Trustee and/or the Debtor may call the following witnesses to testify:

Mr. Flaviu Iepure

Mr. Charles Berk

## TIME ESTIMATE

The parties estimate that trial of this matter will require as much as 2 hours.

Respectfully submitted,

WILLIAM K. HARRINGTON
UNITED STATES TRUSTEE
REGION 1

By:    */s/ Eric K. Bradford*
Eric K. Bradford BBO#560231
Department of Justice
John W. McCormack Post Office & Courthouse
5 Post Office Square, 10th Floor, Suite 1000
Boston, MA 02109-3934
Phone: (202) 957-9873

Dated: August 5, 2026.          Eric.K.Bradford@usdoj.gov

MANNING GROSS + MASSENBURG LLP

*/s/David P. Primack*
David Primack (#4449)
125 High Street, Oliver Tower, 6th Floor
Boston, MA 02110
(302) 300-5277
dprimack@mgmlaw.com

*Proposed Counsel to the Debtor*

DAVIDOFF HUTCHER & CITRON LLP

*/s/ Robert L. Rattet*
Robert L. Rattet (*Pro Hac Vice*)
John D. Molino (*Pro Hac Vice*)
120 Bloomingdale Road, Suite 100
White Plains, NY 10605
(914) 381-7400

## CERTIFICATE OF SERVICE

I certify that on August 5, 2026, true and correct copies of the foregoing pretrial memorandum were served by CM/ECF only upon the individuals who filed notices of appearance in the Court's CM/ECF database, including counsel for the Debtor.

Respectfully submitted,

WILLIAM K. HARRINGTON
UNITED STATES TRUSTEE
REGION 1

By:  /s/ *Eric K. Bradford*
Eric K. Bradford BBO#560231
Department of Justice
John W. McCormack Post Office & Courthouse
5 Post Office Square, 10th Floor, Suite 1000
Boston, MA 02109-3934
Phone: (202) 957-9873

Dated: August 5, 2026.        Eric.K.Bradford@usdoj.gov

**BY CM/ECF:**

Joseph S.U. Bodoff on behalf of Creditor Itria Ventures, LLC
jbodoff@rubinrudman.com

Christine E. Devine on behalf of Creditor AmerisourceBergen Drug Corporation
christine@nicholsondevine.com,
devine.christiner109603@notify.bestcase.com;angelina@nicholsondevine.com;
christine_492@ecf.courtdrive.com

James B. Glucksman on behalf of Debtor Remedium Pharmacy, LLC
jbg@dhclegal.com

James B. Glucksman on behalf of Plaintiff Remedium Pharmacy, LLC
jbg@dhclegal.com

Domenic Pacitti on behalf of Creditor AmerisourceBergen Drug Corporation
dpacitti@klehr.com

David P. Primack on behalf of Debtor Remedium Pharmacy, LLC
dprimack@mgmlaw.com, gbressler@mdmc-law.com;scarney@mdmc-law.com

David P. Primack on behalf of Plaintiff Remedium Pharmacy, LLC
dprimack@mgmlaw.com, gbressler@mdmc-law.com;scarney@mdmc-law.com

Robert L. Rattet on behalf of Debtor Remedium Pharmacy, LLC
rlr@dhclegal.com, ms@dhclegal.com;cmp@dhclegal.com;rlr@dhclegal.com